NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0126n.06

No. 25-5630

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MARY MINTON EITEL,

    Plaintiff-Appellant,

v.

STOLL KEENON OGDEN PLLC,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)

FILED
Mar 11, 2026
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY

OPINION

Before: BOGGS, READLER, and DAVIS, Circuit Judges.

BOGGS, Circuit Judge. This case concerns allegations of legal malpractice in the drafting of trust agreements more than fifty years ago. Plaintiff Mary Eitel alleges that the predecessors of Defendant Stoll Keenon Ogden ("SKO") committed professional malpractice by negligently drafting three trust agreements (the "Eitel Trusts") created in the 1960s and 1970s by Ms. Eitel's grandparents and failing to properly advise the Trustees (Count I), aiding and abetting the breach of fiduciary duties of those Trustees (Count II), and breaching SKO's own fiduciary duty (Count III). The district court dismissed all three claims as time-barred by the statute of limitations of KRS § 413.245, and additionally held that Ms. Eitel failed to state a claim sufficient to allege Counts II and III. Ms. Eitel appealed.

We affirm the judgment of the district court.

**BACKGROUND**

In the 1960s and 1970s, plaintiff Mary Eitel's grandparents, Paul T. Eitel, Sr. and his wife, Berenice L. Eitel, created three family trusts. All three trusts generally provided for income and

discretionary principal distributions for the benefit of Ms. Eitel's father, Paul T. Eitel, Jr., with Ms. Eitel having a remainder interest. In 2018, Ms. Eitel's father died, and his wife continued to receive the net income pursuant to the trust's terms until it was terminated by agreement in 2020.

On January 8, 2020, the plaintiff sued fourteen defendants ("Trustees"), each of whom was responsible for managing the Eitel Trusts for some period of time over the past decades. *See Eitel v. PNC Bank, N.A.,* No. 3:20-cv-00012-RGJ, 2023 WL 2230866 (W.D. Ky. Feb. 24, 2023). In *Eitel v. PNC*, the plaintiff alleged that the Trustees mismanaged the trust, that assets, including Porter Paint Company (PPC) stock, were sold in the 1980s for an unfairly low price, and that principal funds were improperly distributed to her father and stepmother. *Id.* at *4. Plaintiff's claims in *Eitel v. PNC* were based on her allegation that her grandparents intended the Eitel Trusts to be "generation-skipping" and primarily meant to benefit their grandchildren, including the plaintiff. The district court granted summary judgment for the Trustees in *Eitel v. PNC* on Plaintiff's claims, holding that each claim had been abandoned or barred by the statute of limitations. *Id.* at *22. That case is currently on appeal.

Ms. Eitel initiated this suit against SKO on August 1, 2023. Ms. Eitel asserted that she was first made aware by the Trustees' summary judgment motions in *Eitel v. PNC* (in September and October 2022) and in the district court's memorandum opinion (in February 2023) that the Trustees did not interpret the Eitel Trusts as generation-skipping trusts. The plaintiff alleged that SKO's predecessor did not properly draft the Eitel Trusts according to her grandparents' intent, which then caused mismanagement by the Trustees. The plaintiff makes three claims under Kentucky statutes and common law: that SKO committed professional malpractice by negligently drafting the Eitel Trusts and failing to properly advise the Trustees (Count I); that SKO aided and abetted

the Trustees' breach of fiduciary duties (Count II); and that these actions also constitute a breach of SKO's fiduciary duty to the plaintiff (Count III).

The district court dismissed all three claims with prejudice under Fed. R. Civ. P. 12(b)(6), holding that all claims were time-barred by the one-year statute of limitations of KRS § 413.245. The district court additionally held that Ms. Eitel failed to state a claim for Counts II and III. Ms. Eitel timely filed this appeal.

## ANALYSIS

We review de novo a decision granting a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Rudd v. City of Norton Shores*, 977 F.3d 503, 511 (6th Cir. 2020); *Wesley v. Campbell,* 779 F.3d 421, 428 (6th Cir. 2015). To survive a 12(b)(6) motion to dismiss, the plaintiff must "allege facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." *Wesley*, 779 F.3d at 427 (citation modified).

Under Kentucky law, the applicable statute of limitations for professional-malpractice claims is KRS § 413.245. This is "the exclusive statute of limitations governing claims of attorney malpractice." *Abel v. Austin*, 411 S.W.3d 728, 738 (Ky. 2013) (emphasis omitted). In this case, all three of the plaintiff's claims arise from SKO's provision of professional services, so KRS § 413.245 governs all three claims.

The one-year limitations period under KRS § 413.245 begins to run against a claimant upon the later of: (1) the occurrence of the cause of action; or (2) the date when the cause of action was or reasonably should have been discovered. KRS § 413.245. The "occurrence" limitation begins to run upon the accrual of the cause of action, "where negligence and damages have both occurred." *Queensway Fin. Holdings Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 147 (Ky.

2007). The "discovery" limitation period "begins to run when the cause of action was discovered or, in the exercise of reasonable diligence, should have been discovered." *Id.* at 148.

### A. "Occurrence" Limitation Period

The one-year limitation period running from the occurrence of the cause of action has clearly long passed. Ms. Eitel alleges negligence in the drafting of the trusts, which occurred in the 1960s and 1970s, in the sale of PPC stock, sold in 1982, and in allegedly improper distributions from the principal of the trusts, which had their final distribution in 2020. Therefore, negligence necessarily occurred prior to the dissolution of the trusts in 2020.

Injury is much the same. For a non-litigation legal-malpractice claim, a claimant's damages are considered irrevocable and non-speculative when the claimant is reasonably certain that damages will indeed flow from the defendant's negligent act. *Wolfe v. Kimmel*, 681 S.W.3d 7, 26 (Ky. 2023). Both negligence and injury, then, occurred at the latest in 2020, when the final distribution occurred. Ms. Eitel alleges that she was harmed because she received less money from the remainder of the trusts than she ought to have. This injury was realized, at the absolute latest, at the time that the trust was paid out.

Therefore, Ms. Eitel must rely on the second measure of the start of the limitations period: the date when the cause of action was or reasonably should have been discovered.

### B. "Discovery" Limitation Period

There is substantial dispute over when Ms. Eitel discovered, or reasonably should have discovered, the cause of action, much of which was litigated in *Eitel v. PNC*. The district court in our case appropriately found, however, that regardless of whether Ms. Eitel did or should have discovered her claims earlier, she had certainly discovered her claims by the time she filed her

second amended complaint in *Eitel v. PNC* in December 2020.[1] In that complaint in the earlier suit, Ms. Eitel alleged "improper distributions" and "improper principal encroachments," and established that she knew of the sale of the PPC stock and that she believed she was injured by that sale. Pl.'s 2d Am. Compl., *Eitel v. PNC Bank*, N.A., No. 3:20-cv-00012-RGJ.

Ms. Eitel makes several arguments to the contrary, but none are availing. First, Ms. Eitel argues that she could only "confirm[] [SKO] had committed malpractice" after the summary-judgment orders in *Eitel v. PNC* interpreted the language of the trust. Appellant's Br. at 22–23. Ms. Eitel cites *Wolfe v. Kimmel* and *Conway v. Huff*, 644 S.W.2d 333 (Ky. 1982), as representing the idea that "an authority figure such as an attorney, judge, or federal government agency" must inform the plaintiff of negligence and damages to trigger the statute of limitations on their "occurrence." Appellant's Br. at 23. The argument seems to be that the negligence and injury only became discoverable at the time of the district court's summary-judgment order in *Eitel v. PNC*.

But *Wolfe* and *Conway* do not stand for the proposition that discovery requires a judge's recognition. It is true that, in both cases, the statute of limitations began to run when the plaintiff discovered the negligence by consulting new counsel. But neither case holds that the plaintiff must be explicitly informed by an "authority figure" for discovery to occur; consultation with counsel simply happened to be the method of discovery in those instances. Ms. Eitel was neither oblivious to her injury nor without the benefit of counsel. She filed suit in *Eitel v. PNC* in 2020 based on nearly identical claims: alleged improper sale of stock and improper distributions from the trust. Ms. Eitel had access to both the trust documents and an attorney—there is no reason that, in the exercise of reasonable diligence, she could not have discovered this cause of action sooner.

---

[1] The district court in *Eitel v. PNC* held that Ms. Eitel had actual or constructive knowledge as early as 2004. However, the district court in this case relied only on the content of Ms. Eitel's pleadings in *Eitel v. PNC*, not on the court's findings in that case.

Ms. Eitel's interpretation of the discovery provision is not based in law. A judge is not required to determine that malpractice occurred for the cause of action to be discoverable. The statute of limitations begins to run when a plaintiff should have been put on notice that she has a claim. While the parties dispute when Ms. Eitel obtained various pieces of information, there is no doubt that she was on notice that she had a claim by 2020, because she actually filed one.

The plaintiff additionally attempts to rely on *Zimmie v. Calfee, Halter, & Griswold,* 538 N.E.2d 398 (Ohio 1989), in which an Ohio court held that a claim accrued under Ohio's discovery rule when there was a "cognizable event which should have alerted a reasonable person that a questionable legal practice may have occurred." *Id.* at 402. In *Zimmie*, the court found the "cognizable event" was the invalidation of the plaintiff's prenuptial agreement. *Ibid.* But the rule in *Zimmie*—even if we rely on an Ohio court's interpretation of an Ohio law in our interpretation of a Kentucky statute—does not require a court finding for a "cognizable event." In that case, the court's determination was the event that put Zimmie "on notice" of his need to pursue his possible remedies against appellees. Prior to the court invalidating the prenuptial agreement, Zimmie was not "on notice" that the contract was not functioning as intended; the injury manifested with the invalidation. Here, though, Ms. Eitel was aware of her need to pursue remedies well before the district court ruled, at least as early as 2020 when she filed her initial suit. The court's different interpretation of the trust language in *Eitel v. PNC* was not required to put Ms. Eitel on notice of her claim.

The fact that Ms. Eitel previously attributed her injury to the Trustees rather than to the drafters of the trust makes no difference. "Under Kentucky law, the discovery rule . . . . does not operate to toll the statute of limitations to allow an injured plaintiff to discover the identity of the wrongdoer unless there is fraudulent concealment or a misrepresentation by the defendant of his

role in causing the plaintiff's injuries." *McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. Ct. App. 1999). "A person who has knowledge of an injury is put on 'notice to investigate' and discover, within the statutory time constraints, the identity of the tortfeasor." *Ibid*. Ms. Eitel was aware of her injury by the time she filed suit in *Eitel v. PNC*, so she was on 'notice to investigate' and the statute of limitations began to run no later than 2020.

## C. Tolling of the Statute of Limitations

Ms. Eitel next argues that the statute of limitations should be tolled either because of statutory or equitable estoppel, or because Ms. Eitel was allegedly disabled. It should not.

First, the statute that Ms. Eitel identifies is KRS § 413.190(2), which provides that "[w]hen a cause of action mentioned in KRS 413.090 to 413.160 accrues against a resident of this state, and he . . . obstructs the prosecution of the action, the time of the continuance of the . . . obstruction shall not be computed as any part of the period within which the action shall be commenced." KRS § 413.190(2). The plain text of the statute makes it clear that it does not apply to KRS § 413.245. Moreover, Kentucky courts have also confirmed that it does not apply. *See, e.g., Old Mason's Home of Ky., Inc. v. Mitchell*, 892 S.W.2d 304, 308 (Ky. Ct. App. 1995) ("Having concluded that the applicable statute of limitations is that prescribed in KRS 413.245, it follows that [the plaintiff]'s reliance upon KRS 413.190(2) is misplaced.").

Second, Ms. Eitel does not plead any specific facts that support equitable estoppel on the basis of fraudulent concealment. For equitable estoppel to apply, "there must be 'some *act or conduct* which in point of fact misleads or deceives the plaintiff and obstructs or prevents [her] from instituting [her] suit while [s]he may do so.'" *Gailor v. Alsabi*, 990 S.W.2d 597, 603 (Ky. 1999). Ms. Eitel's claim that SKO "fail[ed] to counsel PNC Bank to disclose material information to

[her]" at best alleges an omission rather than an act, and thus fails to meet the requirement for equitable estoppel.

Finally, Ms. Eitel makes the argument that the statute of limitations should be tolled as a result of her alleged disability. In her Motion for Reconsideration below, she attempted to file the 2024 Miller Report, a report on her mental status by a psychologist, as "newly discovered evidence." *Eitel v. Stoll, Keenon, Ogden PLLC*, No. 3:23-cv-00398-GNS, 2025 WL 1594287, at *3 (W.D. Ky. June 5, 2025). However, she provided no reason why the report was "previously unavailable" under Fed. R. Civ. P. 59(e), and the district court appropriately did not consider it. *Id*. at *4. On appeal, she seems to instead attempt to rely on the earlier, similar 2017 Miller Report instead, which was originally filed in *Eitel v. PNC*.

First, to the extent that Ms. Eitel failed to adequately raise the 2017 Miller Report below—and in fact first raised the tolling argument based on her alleged disability in her amended response to the motion to dismiss—the argument is forfeited. Ms. Eitel's pleadings contain no information about her alleged disability or why it should toll the statute of limitations. Even if we did consider the argument, Ms. Eitel's assertions do not establish a legal disability under Kentucky law, particularly because "persons of 'unsound mind' must bring suit through their guardian, committee, or next friend." *Wright v. Louisville Metro Gov't,* No 3:21-cv-00308-BJB-CHL, 2024 WL 4432518, at *2 (W.D. Ky. June 17, 2024) (citation omitted). Ms. Eitel provides no explanation as to how she is both competent to bring suit under her own name but also legally disabled for the purpose of tolling the statute of limitations.[2] The district court appropriately held that the statute of limitations is not tolled as a result of Ms. Eitel's alleged disability.

---

[2] A legal disability is not the same as a medical disability. A legal disability "is measured by functional inabilities" and requires that the individual "lack the ability to make informed decisions about their personal affairs or financial

Because Ms. Eitel's claims had accrued and she had or reasonably should have discovered her claims by January 2020 at the latest, and equitable estoppel does not apply, her claims are barred by the statute of limitations.

## CONCLUSION

For the reasons given above, the judgment of the district court is **AFFIRMED**.

---

resources or substantiate that any such issues have recently occurred." *Wright,* 2024 WL 4432518, at \*2 (citing Fed. R. Civ. P. 17(b)(1); KRS § 387.510(8)).